UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:19-cv-80531-WM

JOHN DREWES, JAMES DREWES
(as Trustees of the Drewes Family Trust)
and JAMES DREWES,

        Plaintiffs,
v.

CETERA FINANCIAL GROUP, INC.,
and ADAM ANTONIADES,

        Defendants.
_____/

FILED BY KJZ D.C.

Dec 21, 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S. D. OF FLA. - West Palm Beach

**<u>ORDER GRANTING DEFENDANTS' MOTION FOR JUDICIAL NOTICE OF THE
DOCUMENTS ATTACHED TO DEFENDANTS' MOTION TO DISMISS [DE 87]
AND GRANTING IN PART AND DENYING IN PART
DEFENDANTS' MOTION TO DISMISS [DE 76]</u>**

THIS CAUSE is before the Court on Defendants' Motion to Dismiss Counts 3-12 of Plaintiffs' Third Amended Complaint [DE 76] and Defendants' Motion for Judicial Notice of the Documents Attached to Defendants' Motion to Dismiss [DE 87]. The Motions are fully briefed and the Court held a hearing via Zoom VTC on December 2, 2020. Thus, the matter is ripe for review. For the reasons that follow, the Court grants the Motion for Judicial Notice[1] [DE 87]. The Court also grants in part and denies in part the Motion to Dismiss [DE 76].

**I. Background**

---

[1] At the December 2, 2020 hearing, neither side wished to assert any argument regarding this issue. Nonetheless, after careful review, the Court will grant the Motion. The Eleventh Circuit has held "[o]rdinarily, we do not consider anything beyond the face of the complaint and documents attached thereto when analyzing a motion to dismiss." *Fin. Sec. Assur., Inc. v. Stephens, Inc.*, 500 F.3d 1276, 1284 (11th Cir. 2007). The court however, has "recognize[d] an exception, ... in cases in which a plaintiff refers to a document in its complaint, the document is central to its claim, its contents are not in dispute, and the defendant attaches the document to its motion to dismiss." *Id*. In this case, Plaintiffs referenced or relied upon all of the documents attached to the Motion to Dismiss throughout the TAC. Accordingly, the Court shall take judicial notice and determine what weight, if any, to give to these documents.

According to the Third Amended Complaint, John Drewes ("Mr. Drewes"), first affiliated with Legend Advisory, LLC and/or Legend Group Holdings, L.L.C. (collectively, "Legend"), in 1994. [DE 73 ¶10]. James Drewes ("James") subsequently affiliated with Legend and the two co-owned a Legend Branch ("Branch") in Florida with Steven Fisher ("Fisher"). [DE 73 ¶11]. Mr. Drewes and his son James owned the controlling share of the corporation that owned the Branch, Global Financial Associates ("GFA"). [DE 73 ¶21].

Over time, the Drewes developed a book of personal clients, called a "book of business," which "has a marketable value than can be sold or purchased for a price to other representatives or organization of representatives." [DE 75 ¶17]. Mr. Drewes also grew the Branch by recruiting other financial advisors to join the Branch, who would then develop their own books of business. [DE 75 ¶¶11, 17].

Legend incentivized financial advisors to grow their books of business by offering the "Financial Security Program" (the "Program"). The Program allowed registered representatives to receive a 75% override on the advisory and custodial fee income generated by their books of business after retirement from the financial services industry. [DE 73 ¶34].

"In or around 2014 or 2015," Defendant Cetera purchased Legend. [DE 73 ¶42]. "In or around February 2016," Legend stopped making manager override payments to Mr. Drewes on the grounds that he was not eligible to receive them without a Series 65 license. [DE 73 ¶¶63, 132].

In September 2016, Legend announced that the Program was being terminated due in order to comply with "regulatory guidance." [DE 73 ¶¶48-49]. The announcement was sent by Legend CEO, Shashi Mehrotra, allegedly at Defendant Antoniades' direction. [DE 73 ¶¶48-50]. Plaintiffs allege that "there was no regulation or change of regulation that justified the cancellation of the Program" and Defendants knew it. [DE 73 ¶¶54-55].

2

After the Program was cancelled, in October 2016, Mr. Drewes signed an agreement by which he released his rights under the Program in exchange for $25,000. [DE 73 ¶68]. At the time of signing, Mr. Drewes was in a "debilitated state" after suffering a stroke. [DE 73 ¶68].

On January 3, 2017, Lincoln Investment Capital Holdings, LLC ("Lincoln") purchased Legend from Defendant Cetera. [DE 73 ¶42]. In July 2018, Fisher[2] "moved John's book of business to a new Branch" he had established with Lincoln. [DE 73 ¶61]. "In the year leading up to that transfer" – from July 2017 to July 2018 – "Lincoln and Fisher" cancelled "John's overrides and other fees (which had been promised and assigned to James)." [DE 73 ¶61]. Lincoln then terminated the Drewes' registration with them in July 2018. [DE 73 ¶61]

This litigation followed. The pending Third Amended Complaint contains twelve Counts. However, only Counts 3-12 of Third Amended Complaint are subject to this Motion to Dismiss. Plaintiffs assert against all defendants claims of constructive fraud (Count 3), conspiracy to commit constructive fraud (Count 4), aiding and abetting constructive fraud (Count 5), exploitation of an elderly adult or disabled person (Count 6), conspiracy to exploit an elderly adult or disabled person (Count 7), fraudulent misrepresentation (Count 8), and negligent misrepresentation (Count 9). Plaintiffs assert against Defendant Cetera only claims of breach of contract (Count 10), promissory estoppel (Count 11), and breach of covenant of good faith and fair dealing (Count 12).

## II. Legal Standard

Fed. R. Civ. P. 8(a)(2) requires "'only a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)

---

[2] According to the TAC, Steve Fisher was a cofounder and co-owner of the Branch. [DE 73 ¶11].

3

(quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). When a court considers a motion to dismiss under Fed. R. Civ. P. 12(b)(6), it must accept the factual allegations in the complaint as true and decide whether the allegations "raise a right to relief above a speculative level." *Id*. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (quoting *Twombly*, 550 U.S. at 555). "This rule does not 'impose a probability requirement at the pleading stage.' Instead, the standard 'simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence' of the required element." *Rivell v. Private Health Care Sys., Inc*., 520 F.3d 1308, 1309–10 (11th Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).

### III. Analysis

In their briefing and at the December 2, 2020 hearing, both sides organized their argument into four groups. To avoid unnecessary repetition, the Court will also analyze them in this manner.

    a. <u>Counts 3, 4, and 5 (The Fraud Counts)</u>

Defendants move to dismiss these three counts with one common argument; specifically, Defendants argue that Plaintiffs have failed to plead facts that would allow the Court to draw the reasonable inference that a fiduciary or confidential relationship existed between the parties. The Court rejects this argument.

4

Under Florida law,[3] constructive fraud occurs "when a duty under a confidential or fiduciary relationship has been abused or where an unconscionable advantage has been taken." *Am. Honda Motor Co. v. Motorcycle Info. Network, Inc.*, 390 F. Supp. 2d 1170, 1179 (M.D. Fla. 2005). A fiduciary or confidential relationship exists where one party reposes confidence onto another and that trust is expressly accepted by the other. *Argonaut Development Group, Inc. v. SWH Funding Corp.*, 150 F. Supp. 2d 1357, 1363 (S.D. Fla. 2001). A fiduciary relationship may also be created where "confidence is reposed as a result of the position of superiority and influence held by the fiduciary." *Id*.

To state a claim for breach of a fiduciary or confidential relationship, "a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party." *Am. Honda Motor Co.*, 390 F. Supp. 2d at 1179. "Constructive fraud will not lie where the parties are dealing at arm's length because there is no duty imposed on either party to protect or benefit the other." *Id*.

The Court finds that Plaintiffs have sufficiently pleaded that a fiduciary or confidential relationship existed between the parties. The Third Amended Complaint alleges that Plaintiffs depended on Defendants for their products, compliance advice, accounting practices, and administrative control over client accounts. [DE 73 ¶ 12, 22, 23, 24, 60]. Plaintiffs allege that these actions amounted to them placing their trust in Defendants, who in turn accepted that trust. [DE 73 ¶ 12, 16, 30-32, 36, 41]. Plaintiffs point to Defendants' statements that they were "partners" and "family" as example of the ways in which Defendants accepted and reinforced this

---

[3] Federal courts sitting in diversity jurisdiction apply the law of the forum state when deciding claims originating in state law. *See Goodwin v. George Fischer Foundry Sys., Inc*., 769 F.2d 708, 711 (11th Cir. 1985); *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

relationship. [DE 73 ¶ 37]. At this early stage of litigation, the Court finds that Plaintiffs have adequately pleaded the existence of a fiduciary or confidential relationship between them.

Regarding Counts 4 and 5, Plaintiffs allege that Defendants aided, abetted, and conspired with Fisher to constructively defraud Plaintiffs. Specifically, Plaintiffs allege that Fisher signed a nondisclosure agreement with Defendants which barred him from discussing their alleged plans to defraud Plaintiffs out of their book of business, [DE 73 ¶ 111], and also that Fisher induced Mr. Drewes into signing the document releasing Legend from liability stemming from the Program's cancellation. [DE 73 ¶¶102–106]. The allegations are well-pleaded, and the Court credits them as true for purposes of this motion. The Court finds that Plaintiffs have adequately pleaded that Defendants aided, abetted, and conspired with Fisher.

Defendants argue that the relationship between the parties was one of broker-dealer and registered representative. Defendants point out that this is a tightly regulated industry; further, they assert that the dependency Plaintiffs describe is legally required. Defendants argue that a registered broker-dealer is legally required to supervise and provide regulatory oversight to its registered representatives. However, at the December 2, 2020 hearing, the Court specifically asked defense counsel whether it was their position that a broker-dealer and registered representative can never have a fiduciary or confidential relationship. When pressed, defense counsel stated that was not their position. No law has been cited for this proposition; instead, Defendants primarily argue that Plaintiffs have not sufficiently alleged facts.

But the Third Amended Complaint contains sufficient factual matter to survive a motion to dismiss. Plaintiffs' claims have facial plausibility and permit this Court to draw the reasonable inference that the Defendants are liable for the misconduct alleged in Counts 3, 4, and 5. Having found that Plaintiffs have pleaded sufficiently allegations, the Court observes that the question of

whether a fiduciary or confidential relationship exists is typically a question of fact. *See, e.g., Swerhun v. Gen. Motors Corp.*, 812 F. Supp. 1218 (M.D. Fla. 1993). At this stage of litigation, the facts alleged by Plaintiffs are sufficient to raise a reasonable expectation that discovery will reveal evidence of the required elements. Accordingly, the Court will deny the motion to dismiss Counts 3, 4, and 5.

b. Counts 6 and 7 (The Exploitation of Elderly Persons Counts)

Defendants move to dismiss Plaintiffs' claims brought pursuant to the Florida Statutes § 825.101(1), entitled "Exploitation of an Elderly Person or Disabled Adult," by asserting three common arguments. Essentially, Defendants argue that Plaintiffs failed to plead facts that would allow the Court to draw the reasonable inference that (1) a business relationship existed between the parties, (2) a fiduciary relationship existed between the parties, and (3) a conspiracy existed between Fisher and Defendants.[4]

Under Florida Statute § 825.103, a "business relationship" is defined as a "relationship between two or more individuals or entities where there exists an oral or written contract or agreement for goods or services."

Defendants argue that Plaintiffs' pleading fails to allege that a business relationship existed between the parties; instead, as Defendants argue, Plaintiffs only pleaded that a business relationship existed between Legend and Plaintiffs. Plaintiffs respond by arguing that Defendants controlled Legend and caused it to violate the statute.

The Court finds that Plaintiffs have adequately pleaded that the requisite type of relationship existed between the parties. In addition to the allegation made in paragraph 118 of the

---

[4] The second and third arguments are due to be rejected for the same reasons stated in section "a," of this Order, *supra*.

Third Amended Complaint, Plaintiffs incorporated all prior allegations made into that count. Importantly, this includes those made in paragraphs 53, 56-57, 69-70, which allege that Defendants exerted a significant amount of control over Legend. Moreover, Cetera owned Legend, [DE 73 ¶42], and Defendant Antoniades is alleged to have essentially used Legend's CEO as an alter-ego to cancel the Program. [*Id*. at 48-50]. The Court agrees with Plaintiffs that it would defeat the purpose of the statute to require a plaintiff to plead that privity of contract exist between all the parties—this would allow a person or entity to easily avoid liability under the statute by simply establishing a shell corporation or alter-ego. At this early stage of litigation, the Court finds that Plaintiffs have pleaded that the requisite type of relationship existed between the parties. As such, the motion to dismiss Counts 6 and 7 is due to be denied.

  c. <u>Counts 8 and 9 (The Fraudulent and Negligent Misrepresentation Counts)</u>

Defendants move to dismiss both of these Counts, which are based upon three alleged misrepresentations:

  (1) that John was ineligible to receive overrides because he did not have a Series 65 license, a statement made or about February 1, 2016 by an agent of Cetera, which was at that time exercising regulatory oversight of the Drewes' business;

  (2) that Legend had "no obligation" to provide Program benefits or their equivalent to John (and many others) due to regulatory prohibitions against it, a statement made on or about June 13, 2016 by Antoniades acting on behalf of Cetera as its President;" and

  (3) that regulatory considerations required that the Program be cancelled, stating, "The Legend Group ("Legend") created the Legend Advisor Financial Security Program (the "Program") with the goal of assisting representatives through retirement. However, having recently completed a review of the Program, we have determined that it is no longer supported by regulatory guidance." This statement was made on or about September 10, 2016 and communicated to all Legend representatives by Mehrotra at Antoniades' direction in a written notification to Legend advisors.

[DE 73 ¶132]. Defendants argue that all of these statements are premised upon the faulty assumption that there was no change in the regulatory guidance that would have prevented the

8

payment of overrides to Mr. Drewes after he no longer had the Series 65 license and that Defendants knew or should have known this. Regarding the first statement, Defendants also argue that Plaintiffs failed to plead necessary facts relating to the context in which the statements were made. Finally, with regard to the second statement, Defendants argue that Plaintiffs conceded that they did not rely on it, and thus failed to state a claim regarding that statement. Plaintiffs respond by arguing that, at this stage of litigation, the Court must accept as true their allegation that the statements were false. Plaintiffs further argue that they have pleaded with sufficient specificity the factual context in which the statements were made.

Under Florida law, "there are four elements of fraudulent [or negligent[5]] misrepresentation: (1) a false statement concerning a material fact; (2) the representor's knowledge that the representation is false; (3) an intention that the representation induce another to act on it; and (4) consequent injury by the party acting in reliance on the representation." *Butler v. Yusem*, 44 So. 3d 102, 105 (Fla. 2010).

Regarding the first statement, the Court finds that Plaintiffs have pleaded the factual context in which the statement was made with sufficient specificity. Defendants argue that Plaintiffs failed to plead who "an agent of Cetera" was. The Court rejects this argument. At this early stage of litigation, "the requirements of Rule 9(b) are satisfied if the complaint provides a reasonable delineation of the underlying acts and transactions allegedly constituting fraud such that the defendants have fair notice of the nature of plaintiff's claim and the grounds upon which it is based." *Hirsh v. Silversea Cruises Ltd*, 2015 U.S. Dist. LEXIS 191529, at *6 (S.D. Fla. Mar.

---

[5] The elements of the two causes of action are nearly identical. *Drilling Consultants, Inc. v. First Montauk Sec. Corp.*, 806 F. Supp. 2d 1228, 1236 (M.D. Fla. 2011) (providing the elements for negligent misrepresentation). The only materially different element is the second element—the degree of culpability of the speaker/writer—which is not at issue here. As such, these two Counts can properly be analyzed together.

5, 2015). Moreover, the exact name of the speaker/writer is not subject of inquiry; rather, the Plaintiffs must merely provide Defendants notice of "the person(s) responsible for the misrepresentation." *Ambrosia Coal & Constr. Co. v. Pages Morales*, 482 F.3d 1309, 1316-17 (11th Cir. 2007). Plaintiffs here have clearly done so, by identifying the responsible person as Defendant Cetera, the principal of the speaker/writer.

Regarding the second statement, the Court agrees with Defendants. It is undisputed that Plaintiffs did not hear or rely upon the statement in any way. As such, they have failed to plead the necessary element of injury caused by their reliance on the statement.

Finally, regarding the third statement, the Court finds that Plaintiffs have sufficiently pleaded that the statement was false. At this early stage of litigation, there is no requirement that Plaintiffs prove the merits of their claim or even prove that they will "probably" succeed. *Rivell*, 520 F.3d at 1309–10. Instead, they must allege plausible facts on which a reasonable inference can be drawn that they are entitled to the relief sought, and the Court must accept those facts are true. *Twombly*, 550 U.S. at 555.

In this case, it is certainly plausible that Defendants' invocation of the phrase "no longer supported by regulatory guidance" was a pretext to avoid the obligation of future override payments made under the Program. As such, the Court accepts as true Plaintiffs' allegation that the statement was false. To require Plaintiffs to plead any additional facts would require this Court to determine the answer to a complex matter of securities regulation at the 12(b)(6) stage, which is beyond the proper scope of an inquiry brought under this rule. This is not a case where the alleged misrepresentation quite obviously correctly stated the law; for example, if a worker sued an employer for fraudulent misrepresentation, alleging that the employer "falsely" told him that the federal minimum wage was $7.25, a court could easily find the worker's allegation to be

implausible if the federal minimum wage was, in fact, $7.25. This case obviously presents a much different situation, because Plaintiffs' allegation is plausible. As such, at this stage of litigation, Plaintiffs have sufficiently pleaded that the third statement was false.

To conclude, the Court finds that the Motion is due to be denied. However, the Court observes that Plaintiffs failed to plead the necessary elements of fraudulent or negligent misrepresentation regarding the second statement. Nonetheless, the viability of these two Counts do not depend on the second statement, which is just one instance or negligent or fraudulent misrepresentation. The Court will deny the Motion as to Counts 8 and 9.

    d.  <u>Counts 10, 11, and 12 (The Breach of Contract "Alternative" Counts)</u>

Defendants move to dismiss these Counts on the grounds that there is no basis to hold Cetera, the parent corporation of Legend, liable for these three claims which stem from a breach of contract by its subsidiary. Plaintiffs do not respond on the merits. Instead, they assert that these claims were brought in the alternative to protect Plaintiffs in the event that Defendant Cetera argued that it was not liable under Counts 1 or 2 for contract interference on the basis that one cannot interfere with one's own contract.

The Court notes that Defendants have not moved to dismiss Counts 1 or 2 on any basis. Thus, because Plaintiffs have not made any argument that these claims should remain viable at this stage of litigation, and because there is no basis for their continued viability given that Counts 1 and 2 are not subject to any motion to dismiss, the Court agrees with Defendants that they must be dismissed.

## IV. Conclusion

Based on the foregoing, Defendants' Motion to Dismiss the Third Amended Complaint [DE 76] is GRANTED IN PART as to Counts 10, 11, and 12. These Counts are dismissed without

prejudice. Defendants' Motion is DENIED in all remaining respects.

**DONE and ORDERED** in chambers at West Palm Beach, Palm Beach County, Florida, this 21st day of December 2020.

_____
WILLIAM MATTHEWMAN
United States Magistrate Judge